May it please the court, Per Olson for the defendant Alexander Lukashov. I would like to reserve three minutes for rebuttal if I may. Mr. Lukashov has been found guilty and convicted of aggravated sexual abuse in the first degree. The case involved Mr. Lukashov traveling across country as a commercial truck driver. With him was his eight-year-old stepdaughter who claimed that he molested her more than once along the way. The jury believed him. I'm sorry? And the jury believed him. The jury did and the jury found him guilty of aggravated sex abuse. They acquitted on one other count and the jury was hung on a third count. The case, the primary issue on appeal I believe is one of an interpretation of the venue statute for continuing crimes 18 U.S.C. 3237A and the two subparagraphs that fall under that. We raised an issue at the stage of judgment of acquittal, motion for judgment of acquittal, that venue had not been established because there was no evidence that any part of any of the three crimes alleged occurred in the state of Oregon or in the District of Oregon. And as the case proceeded through jury verdict, jury instructions and jury specifically of that second paragraph or second prong of 3237A. On appeal we only have the one count that Mr. Lukashov was convicted of, aggravated sexual abuse in the first degree, which involves the elements of crossing a state line with the intent to engage in sexual contact with a person under the age of 12 years. And the judge also instructed the jury that they had to an attempted act occur. Isn't that correct? Yes. I mentioned that only as a caveat because when you read the statute itself it's not clear that an act is actually an element of the offense. But crossing the state line with the thought is not crime in and of itself. I would think so, Your Honor, yes. And it involves a 30-year mandatory minimum, so Judge Brown was convinced that there has to be an act of some sort. There has to be a sexual contact. And the judge recognized that there was a factual dispute as to Vaney because there really was very little evidence, if any, to say that Mr. Lukashov formed the intent in Oregon before he left. There's certainly no acts that occurred in Oregon and no There's three different interrogatories that were asked. The first question, which is... What kind of evidence would there have to be as to his intent when he started out on this trip with an eight-year-old that he knew was going to go to New York and all the way back to Oregon? Well, there's got to be some circumstantial evidence of an intent to actually engage in sexual contact with this girl. And it could be, it could have been, it might have been evidence based on past conduct it might have been evidence based on something that he said or something that he brought with him or whatever. But the point, Your Honor, I believe is that this jury, in response to that first interrogatory, which asked, did this offense begin, continue, or end in Oregon? They found that the government failed to prove that by even a preponderance of the evidence. Unanimously, they found that. And so, and then they, of course, went on to answer yes to the question of whether the case involved, or whether the offense involved, transportation beginning or continuing or ending in Oregon. But we maintain that that first question was really the only question. The title of the crime, however, is sexual abuse? Aggravated sexual abuse. So that's a little confusing to the jury, I would think, because there was no, it was never shown that the abuse itself took place in Oregon because as a 12-year-old, she didn't even know where it took place. Correct. But, you know, the jury, certainly in the course of arguments and the jury instructions, I think the jury would have understood that had he had the intent to engage in a sex act while in Oregon, crossing into Washington, that venue would have been established in Oregon. And so, we submit that the jury's finding on that first question establishes that venue was not proven in this case. Now, what happened here in the stage of, you know, post-judgment motions is that the court essentially overturned that factual finding, which I think makes this from any other case that I think either myself or the government was able to find. And we contend that there was really no basis for the court to do that. I mean, there was a factual dispute as to venue. And under the precedent from this court, United States v. Cash, C-A-S-C-H, when there is a dispute as to venue, a factual dispute, that matter has to be submitted to the jury. And it was submitted to the jury. The jury found that the crime did not begin... What is the nature of the factual dispute? Well, it's just as to where the crime was committed. What did you argue to the jury and what did the government argue to the jury as to venue that was factually different? I've never seen anything quite like this before. Right. Our argument was just simply that no element of the crime of aggravated sex abuse occurred in Oregon. There was no intent. There was no act. There was no attempted act. And therefore, venue in Oregon was simply inappropriate. I believe the government's argument was that... I can't remember exactly what it was, but it was essentially that because it was the continuity of the trip, he must have formed the intent from the very beginning. And I think the government's argument was that he, in fact, had the intent when he left Oregon to engage in these acts. And so it was purely a factual issue on that question of intent. And the jury found, by virtue of its answer to that interrogatory, that he did not have that intent when he left Oregon. But the court overturned that in the context of its denial of our motion for... our post-verdict motion for judgment of acquittal. And the court's reasoning, and I believe the government's reasoning here, is that, well, the crime ended when he returned the minor to her mother in Oregon. Let me ask you a question on that, because that's how I read her decision also. She wasn't saying he had the intent when he started. But she was saying that when we have someone who abuses a minor child and is in the custody of the abuser, that the crime continues until she's returned to her mother. Which did happen in Oregon. And she thought there was really no fact issue on that. And what's wrong with that theory? Well, number one, it's contrary to the jury's finding. And so it's a factual finding. It's not a legal ruling, as I see it, Your Honor. And so that's one problem with it. The other problem with it is it's not in tune with the elements of the offense that Mr. Lukashop was charged with. I mean, that he was convicted of. He was convicted of aggravated sex abuse in the first degree, which the elements are crossing a state line with the intent to engage in a sexual act with a minor under 12 years old and then engaging in that act. So it's a fairly discreet crime, temporarily speaking. You cross a state line with that intent, you engage in the act, and then if you do it again, that's another act. That potentially could be another crime involving new venue questions. And the distinction I would draw is that Mr. Lukashop was actually charged with other crimes that are more continuous in nature because they have the element of transportation in interstate commerce with the intent to engage in a sex act, travel with a minor, those sorts of crimes of which the federal code has many that involve the element of transportation interstate commerce that by definition is a more continuous form of conduct. And so had he been convicted of one of those counts, I think I would have a more difficult time. But the offense of aggravated sexual abuse is, temporarily speaking, a much more discreet offense. And so the act or the returning of the minor... you have to cross the line with intent to engage in a sexual act and then you have to actually engage in the sexual act. So that the crime is not committed at one particular time. It can't be. And that's correct, Your Honor, but it's still limited in the sense that it's limited in the sense that from the beginning, the beginning of it I mark as the crossing of the state line or as you leave from one state and going into the other. That's the beginning. The end of it is... well, the continuation of it is going across that state line or district into the new district and then committing the offense, wherever that is. So it is... He committed an offense multiple times on this trip. He did. But my contention would be is that, theoretically speaking, each one of those times that he did that would constitute a separate offense involving a separate analysis of venue. But you're analyzing the offense as if it's purely the act. Well... And not the crossing of the state line with intent to engage in the act, which is what gives it the interstate. It wouldn't be an interstate... it wouldn't be a federal crime if it didn't have the element of crossing. No, I agree. And that's why, Your Honor, I would agree that the state from which he crosses from, if you will, and the state that he crosses into would both be proper venue. But here he's coming back to Oregon and the jury's answer to the first question necessarily establishes that he no longer had that intent when he came back to Oregon and he did not have that intent when he left Oregon in the first place. And so the crime had been completed by the time... So you say that's what the jury found? Yeah, in answer to that first question, necessarily. So it's an argument, Your Honor, that's very unique to the specifics. Yes, but I guess the district court said that this was a continuing offense. She was interpreting the statute. And that is a question of law, as to whether or not this is a continuing offense. I would concede that it's a continuing offense, but all continuing offenses have to come to an end. And I guess my main point, Your Honor, is that this offense came to an end long before the defendant returned to the District of Oregon, as found by the jury. And so I'll reserve my remaining three minutes, if I may. Thank you. Is this Ms. Zussman? Good morning, Your Honor, and may it please the Court. Kelly Zussman, appearing on behalf of the United States. On the venue issue, I agree with Mr. Olson that this is kind of a unique factual circumstance in that we had a jury interrogatory on the issue of venue. And then Judge Brown, in retrospect, and also just a little context, the whole question of venue didn't come up until the third day of trial. So I think Judge Brown was scrambling a bit to try and get a good handle on whether or not this was, in fact, an issue of fact for the jury or an issue of law for the Court. Now, she, in her post-verdict opinion, said that she felt that she didn't give the jury adequate instructions on the government's first venue theory, that is, that this was a case that ended in Oregon. What she actually decided was that the only factual issue that was before the jury relative to venue was whether or not the sexual acts took place at all, which was, of course, the central dispute at trial, and that once the jury determined that factual dispute, venue then became an issue of law that she was to decide. So that was why she disregarded the jury's finding on that point and said, okay, once the jury found the sexual acts occurred, I am finding as a matter of law, because this is a continuing offense, it didn't end until he actually returned the child to Oregon. And I think that makes sense. And one thing I did want to point out that I don't think we made clear in the brief is really that very close timing that took place here. Now, according to TF, the last sexual act occurred in Nevada, and we know that in Nevada, that was the one place that the defendant had actually rented a motel room. They checked in on the 16th of February, 2009. They checked out on the 17th. They were in Oregon on the 18th, and we know that from the exhibits from the defendant's logbook. So this really did take their return to Oregon was really immediately following the last sexual act that occurred while they were on the road. Now, even if we get mired down in the whole jury and judge question, the government also advanced a second theory of venue that I think is equally viable, and that is that this was an offense that involved transportation. The statute required that the government had to prove that they crossed a state line and that the defendant had the intent to engage in the sexual acts. And I think Breitweiser is really on all fours with this case in terms of there are going to be offenses just like this, where the victim may not know exactly where they are, but because it involves a form of transportation, a conveyance as the long-haul truck in this case, that venue is proper here in Oregon, or I should say in Oregon where we came from. And all of the practical factors that we raised were not to suggest that, in fact, the crime doesn't have to take place in Oregon, only that when it's a continuing offense,  the fact that other significant acts take place in other places doesn't... So what piece of this crime took place in Oregon in this case then? Because let's assume, which, I mean, the jury certainly could have found this, that he didn't intend to abuse the girl when he first started out, but, you know, that idea came upon him at some time after he drops her younger brother off in Montana. And then he is a serial abuser en route to New York and back through Nevada. But if he then, in Nevada, decides, it's okay, I've had my illicit pleasures with this child, but I don't intend to abuse her further, is the crime over? My answer would be no. But it's not over because he still has sole and exclusive custody of her. And this statute requires that the child be under the age of 12. And because of that, she had absolutely no means of escape. It wasn't until she's returned to Oregon and she's returned to her family that she's even in a position to report the offense. So on that score, I think Judge Brown correctly found that in this particular case, it didn't end until they returned to Oregon. Is there any federal case that says that when a serial sex abuser has custody of a child, that their crime of sex abuse continues until they relinquish the custody? I'm not aware of any authority that's that specific, Your Honor. And if we made that up as a new rule to sustain Judge Brown's decision, would that be contrary to any law declared by the Supreme Court or the Ninth Circuit?  The only courts that have addressed specifically 2241C have said that it is, in fact, a continuing offense. I'm not aware of any specific authority that has said a 2241C offense ends with the last sexual act or ends at a certain point in travel. I do think Judge Brown's ruling makes sense from a pragmatic standpoint. And the fact that we don't have a situation like the hypothetical that you started to describe where the last sex act takes place in Nevada and then they continue driving around for weeks and weeks and nothing happens, it's because of that very tight sequence and timing. Because they had sex in the motel room in Nevada. They then, within a day and a half, are returned to Oregon. And, again, in fact, even after they returned to Oregon, it wasn't until he left the residence that the victim felt safe enough to be able to report this incident. Is there any evidence whatsoever that one way or the other as to whether or not he had what he intended? Well, I guess, is there any evidence that he didn't form the intent until after they dropped off the brother? Or let me ask it a different way. Did he know when he set off with the little boy and the little girl in the truck that he was going to drop off the brother and then continue on to New York and back to Oregon with the girl? Yes. That's clear. Yes, that was the plan. And is there any evidence that he suddenly got the idea of abusing her after he dropped off the brother? That's really a gap. We don't know when he formed the intent. But it's reasonable to infer that he had it when he left, that he got it after he dropped off the brother, I assume. Exactly. I mean, what we do know is the trip began in Oregon. That's agreed. And it ended in Oregon. Exactly. And everybody lived in Oregon. Exactly. All the witnesses were in Oregon. Right. And there's never been any suggestion that there was a more appropriate place for venue? No. The only suggestion was that Nevada might have been an alternative. But that would have been not where the defendant lived, not where the victim or anyone else lived. It would have been inconvenient for everyone. But I thought that the appellant's argument is that the crime has to have been done for there to be venue. The venue is in a district where the crime occurred. And that his position, at least, is that the crime is completed based on the jury verdict before they go back into Oregon. Well, the jury found, as to that first prong of the venue statute, that it wasn't begun, continued, or ended in Oregon. But they did find that, in fact, it involved a form of transportation and that venue was proper on that second prong. And that gets us back to Breitweiser, which was because this was a continuing offense that involved a form of transportation, venue in Oregon was proper. Is it possible from the instructions, which I can't find right now, that they thought that the crime here was just the sexual assault? Certainly. And that's where Judge Brown said, look, I really wasn't very clear. She essentially, the instructions that she gave to the jury, as to each count on the venue question, simply tracked the language of the statute. It didn't give the jury any guidance at all on when a 2241C offense would have ended. The venue statute. Correct. On that second paragraph in the venue statute, don't we have some opinions, like from other circuits, the Second Circuit and another one that go contrary to that Breitweiser case? The D.C. Breitweiser is a case where the person's in an airplane, right? Correct. They fly over Georgia and they land in Georgia. And there's some kind of abuse on the plane. And the court upholds that. But I thought that there were other circuits that had said that the elements of the statute must involve the interstate transportation, as opposed to just the circumstances. Well, the D.C. Circuit held that. But the D.C. Circuit also acknowledged Breitweiser. It didn't disagree with Breitweiser. What the D.C. Circuit said was, and I don't disagree, that certainly looking at the elements of the offense is relevant to determining venue. But we know that simply having each of the elements ticked off on a continuing offense doesn't mean that the offense has ended. Now, could we have arrested him in Nevada? Certainly, because all of the elements had been completed at that point. But for venue and for continuing violation purpose, I think we can look to the elements as instructive. And then what the D.C. Circuit said was, now, there may be cases like Breitweiser in which you don't have an element of interstate transportation in commerce. That's not part of the offense. The offense in Breitweiser was 2244A3, which is very similar to 2241C. That doesn't include transportation and interstate commerce as an element. But what the D.C. Circuit said was that there may be those cases like Breitweiser in which there's such a close factual connection that you really don't need to have that as an element, that it is inextricably intertwined with interstate commerce. And, again, I think that's what we have here. Because it has the element of crossing the state line. Exactly. And we have, even though the child knew that the sex took place in Nevada in a state, she remembered that. She also said the sex took place on the road, but she was never able to pinpoint precisely where. And, again, that's exactly what the second prong of 3237 was designed to address. This was an offense that took place on the road in interstate commerce. And like in Breitweiser, even though we know the plane landed at Atlanta, the girls on the plane didn't know what state they were flying over when the plane took place. So that's why I think that second prong provides us with a very viable alternative to say venue is appropriate here. This was an offense that involved interstate transportation. And in terms of that, do we need to have the magic words interstate transportation in the statute? Well, we have crossing a state line. And if you look at the cases and say, well, what do you have to do to prove transportation and interstate commerce? Those cases, and, for example, a decision from this court last year called United States v. Wright said, well, you have to prove that they crossed a state line. So at least from that standpoint, the fact that our statute of conviction requires crossing a state line. It doesn't require commerce, right? That's correct. It does not. Transporting across the state. But that has to be the commerce element to make it a federal crime. The transportation element that suggests a conveyance. So that even if you were in a private car, you are crossing a state line in interstate commerce. You're buying gas. You're buying food. All of the rest of it. So I think, again, because our statute of conviction requires that travel element, that's where I think we do meet the test for the second prong of the venue statute, 3237A. I see that I'm almost out of time. I'm fully prepared to answer any questions you may have about any of the evidentiary rulings that were also challenged. I don't have any questions about anything. If there are no further questions, then the government would submit. Thank you. Okay. Mr. Olson, get some rebuttal time here.  So in response to your question, Your Honor, about, you know, is there any precedent for this idea that venue would be established at the point in which the sex offender returns the child to the mother in the absence of any other acts or any evidence of his specific intent within that district? My response to that is there is clear precedent, Supreme Court precedent, against that idea in the United States versus Rodriguez-Moreno, which lays out the two-step inquiry for determining venue, which is to identify the nature of the crime, that is the conduct constituting the offense, and discern the location of the act or acts constituting the offense. And so this idea of, you know, the venue can continue until such time as the child is safely returned to the parent, although that has some appeal to it, is not in the statute. It's not in the statute. Why isn't it? I guess I don't understand that if the offense can't be committed in one place and the venue statute says that it therefore is continuing and it can be anywhere where it began, continued, or ended. Well, it begs the question, Your Honor, as to what the it is. And my contention is that it is the offense that is completed upon the completion of the act. But the act, but the offense has two elements. That's my problem. Right. It's crossing, that's my question, crossing the line and then sexually assaulting or attempting to. Correct. And in this case, by the jury verdict, you know, I think we can discern that they determined that that last act occurred in Nevada and he no longer had the intent as he crossed into California and then into Oregon. And so the crime, although it was continuous, had been completed, was ended before he returned to Oregon. And in response to your other question, Your Honor, addressed to the government about whether we can infer whether there was any evidence that he didn't have the intent when he left Oregon. And I would submit that that's shifting the burden the wrong way, respectfully. You know, it was the government's burden to prove that he had the intent either when he left. But I don't see how the government can ever prove in a moment in time that you formulate the intent. Inferentially, if you leave with the child and you know where you're going and then you do the act first after you get the opportunity when there are no witnesses, it would seem to me you could. Well, I would submit, Your Honor, that that's. Then you get to, well, the verdict was. Right. I understand. That's the problem is the jury reached a different conclusion on that. And it's strictly a factual issue. And I don't know that they were specifically instructed on, you know, what the act versus the intent. But I don't think we can assume that the jury just didn't understand the instructions. I mean, I think we have to assume that, you know, they understood the instructions and they understood the law and they applied it accordingly in reaching that conclusion. So I see I'm out of time. So unless there's any further questions. No further questions there. Judge Allerton? No. Well, I want to thank both counsel for excellent arguments in a very thorny and difficult case. We will submit Lukashoff. And the court will now take a recess for 10 to 15 minutes.
judges: Schroeder, Alarcon, Gould